WILLIAM L. WATSON, Respondent, *v.* ALBERT PEARLMAN, Defendant, and 342 EAST 72ND STREET CORPORATION, Appellant.

First Department, May 20, 1952.

*Harold L. Herrick* of counsel (*Lewis & Herrick,* attorneys), for appellant.

*Edward K. Kennedy* of counsel (*Joseph F. Murray* with him on the brief; *Edward K. Kennedy,* attorney), for respondent.

HEFFERNAN, J. Defendant landlord has appealed from an order of the Trial Term of the Supreme Court, New York County, which decided the merits of the action in favor of plaintiff and referred the question of damages to an official referee pursuant to the stipulation of the parties.

The action is for damages because of the alleged negligence of the defendants which resulted in damages to personal property of plaintiff.

Plaintiff is a doctor and is a proprietary lessee of an apartment used as his office at 342 East 72nd Street, New York City. He instituted this action against the lessor defendant and against one Pearlman, a painting contractor. The basis of plaintiff's claim is that while Pearlman's employees were painting plaintiff's suite of offices pursuant to a contract between Pearlman and plaintiff, certain radiators were disconnected prior to September 24, 1950, by the defendants, their agents,

servants and employees; that when the painting job was completed by Pearlman the radiators were negligently put back in place by defendants without being connected and that as a result of this omission, when defendant lessor, its agents, servants or employees turned on the steam in September, 1950, the escaping steam damaged the furnishings and equipment of the plaintiff, which damage resulted from defendant lessor's negligence in that such defendant knew that the radiators were not connected. Defendant Pearlman cross-claimed against defendant lessor. At the close of the trial plaintiff's complaint against defendant Pearlman was dismissed and the latter's cross complaint against defendant lessor was withdrawn.

About June 27, 1947, plaintiff entered into a proprietary lease of an apartment on the ground floor of the premises 342 East 72nd Street and acquired shares of stock of the lessor, 342 East 72nd Street Corporation, which is a co-operative apartment corporation in which the tenants in the building are the stockholders.

The proprietary lease, pursuant to which plaintiff took possession of the apartment, provided that the lessee should keep in good repair the interior of the apartment and all plumbing and other fixtures belonging thereto and also provided that the lessee should not, without first obtaining the written consent of the lessor, make any alteration of the gas or steam pipes or plumbing in the apartment.

Plaintiff's wife acted as his secretary and manager and had complete charge of the office with respect to any work to be done in the apartment. Occasionally the superintendent of the building and the handy man employed by the lessor did small jobs in the apartment at the request of plaintiff's wife. For some of this work they were paid. For some they received no compensation. The managing agent instructed the superintendent that the tenants were individual co-operative owners and that the superintendent as such had nothing to do with work in the apartments and that anything he might do for them outside of his regular duties in the building was a matter between him and the individual tenant. The superintendent gave identical instructions to the handy man.

In July, 1950, plaintiff's wife on his behalf made a contract with defendant Pearlman, a painter, to decorate plaintiff's apartment which work was paid for by plaintiff.

On July 17, 1950, one of the painters while removing wall paper in two rooms of the apartment preparatory to painting them asked Mrs. Watson whether she wanted the wall behind

the radiators painted. She replied in the affirmative and the painter then said it would be necessary to have the radiators detached if the work was to be done. Thereupon Mrs. Watson told the doorman that she wanted the handy man to disconnect the radiators. Subsequently, the handy man disconnected the radiators in the apartment and moved them out about three or four feet toward the center of the room, where he left them. Before the decorating work was started the furnishings in these rooms had been placed in the center of the room, the carpets had been taken up and the floors were bare. During the week the painters were there, the superintendent and handy man were hired by Mrs. Watson to install two viewing cabinets in plaintiff's office and to do certain other small jobs for which she paid them.

The painters finished their work on July 21st and when they left the radiators were still out near the middle of the room. Mrs. Watson left on vacation on July 22d and returned August 4th. During the week of July 24th the carpeting was relaid by Brown & Co. Thereafter, the radiators were replaced against the wall with their covers on them by some undisclosed person or persons but were not connected. Mrs. Watson made no subsequent request to the handy man, the superintendent or to defendant lessor to have the radiators reconnected.

On Sunday, September 24th, while the superintendent was absent from the building at about 6:00 P.M., the same handy man turned on the steam and turned it off about 9:00 P.M., which resulted in the damages within plaintiff's apartment. It is undisputed that neither the superintendent nor the managing agent had any knowledge that the radiators had been disconnected. On the morning of September 25th, the superintendent, while on the sidewalk, saw steam on the waiting room window of plaintiff's apartment. He entered the apartment and turned off the valves which were slightly opened and found that the radiators were disconnected. Neither the plaintiff nor his wife, nor any one else had asked the superintendent or the managing agent or any of the officers of defendant corporation to disconnect the radiators or had told them that the radiators had been disconnected or had asked them to reconnect them. The handy man testified that when he disconnected the radiators he thought Mrs. Watson would call him back or call the superintendent to make the reconnection. Mrs. Watson testified that she did not recall telling the doorman that she wanted the handy man to come and remove radiators. She said that her best recollection was that she merely left a request for the handy man

to see the painter and that she did not recall seeing the handy man come to the apartment to disconnect the radiators. The handy man, however, testified definitely that after receiving the message from the doorman he went directly to the basement, got his wrenches and returned to the apartment where he saw Mrs. Watson at the desk who asked him to disconnect the radiators and told him the two rooms where the work was to be done. Mrs. Watson did not resume the witness stand to dispute this testimony. She did testify that she did not at any time see the radiators disconnected and removed from the walls, that she had no recollection of seeing them away from the wall at any time although she was in the apartment every day during the week that the painting work was being done and she went into the room some time during the day. However, the painter saw the radiators out in the middle of the floor at the time they were disconnected. Pearlman's employee saw them there when he finished the job. During the week the painters were there, the handy man spoke to Mrs. Watson while she was in the office when the radiators were disconnected and out in the room. Plaintiff's secretary saw the radiators away from the wall while the painting work was being done. She first observed that they were back in position during the week of July 24th. Moreover, plaintiff in his bill of particulars admitted that he first learned that the radiators were disconnected and removed on or about the 14th day of July which was the first day the painters were there.

The court below found for the plaintiff on the theory that the omission of duty in the field of operation reserved for the landlord constituted negligence. The basis for this decision seems to be that the knowledge of the handy man was imputed to the landlord and that since the handy man had disconnected the radiators there was imposed upon the lessor the duty to restore the radiators to their original condition as a correlative duty of the landlord to provide a proper supply of heat. The difficulty with this result is that it is quite apparent that the handy man in disconnecting the radiators in plaintiff's apartment upon plaintiff's request was in fact acting beyond the scope of his authority and was acting as the agent of plaintiff. Furthermore, the act of the handy man in disconnecting the radiators was in direct violation of the express terms of the lease requiring written consent by the lessor before the lessee made any alteration of the steam pipes or the plumbing in the apartment. The mere facts that the handy man had done some odd jobs in plaintiff's apartment and had in the

course of twenty years disconnected six or seven radiators in the apartments of other tenants did not create any apparent authority on his part to disconnect radiators in violation of the express terms of the lease. Furthermore, plaintiff pursuant to the terms of the lease was obligated to make all repairs within the apartment. Clearly plaintiff was not warranted in assuming that because the handy man, whose duties called upon him to attend the service elevator at certain hours of the day and to do other menial work for the landlord, had disconnected the radiators, that he had undertaken the responsibility of reconnecting them without further request from plaintiff. There is no proof in this record that defendant lessor ever held this handy man out as a person capable of assuming such responsibility. The minor job which the handy man held was notice in and of itself to the plaintiff that he should not be entrusted with the foresight sufficient to reconnect the radiators which he had disconnected at the plaintiff's request. Clearly this record indicates that the duty was on plaintiff or his wife to specifically request that the radiators be reconnected. Likewise, there is no proof in the record that the placing of these radiators back against the wall with the covers on them was the act of defendant.

In view of the provisions of the lease which imposed upon plaintiff the obligation to repair the pipes and fixtures in his own apartment and in view of the failure of plaintiff or his wife to request that the radiators be reconnected, the order directing judgment for plaintiff is erroneous.

The order appealed from should be reversed on the law and facts, with $20 costs and disbursements to appellant, and the complaint dismissed, with costs to defendant-appellant.

PECK, P. J., VAN VOORHIS and BERGAN, JJ., concur; CALLAHAN, J., dissents and votes to affirm in the following memorandum: The handy man in turning on the steam was acting for defendant, and a finding that he was negligent in not ascertaining whether the radiators were reconnected was warranted.

Order reversed, with $20 costs and disbursements to appellant, and the complaint dismissed, with costs to defendant-appellant. Settle order on notice.